Good morning, Your Honors. Andrew Chang for Plaintiff and Appellant Alan Pfeiffer. Your Honors, the briefs cover the issues very well on both sides. I just wanted to highlight some issues today and answer some questions that the Court might have. The first thing I want to highlight, of course, is this appeal is from a summary judgment grant. And in this case, the district court explicitly recognized there are disputed issues of fact that would generally preclude a summary judgment. But in a very narrow issue that really is the core issue in this appeal, the district court got thrown off, we submit, by looking at a bunch of failure to warn cases involving, the Court may be familiar with them, the deep vein thrombosis cases, cases where a passenger has severe asthma and is extraordinarily susceptible to cigarette smoke in the days when, of course, that was allowed. And in those cases where there's no affirmative act on the part of the airline, instead it's a failure to act or an omission, a failure to warn, a failure to provide a defibrillator to assist a passenger who is suffering a condition on the plane. The courts struggle in some of those cases because they're trying to find an affirmative duty on the part of the airline to take some kind of action so that just the failure to do something actually becomes actionable. Now this is a recent development because these are recent theories that have been propounded in some of these cases. But cases for decades, since the Supreme Court defined the term accident for the purpose of the Warsaw Montreal Convention, since 1984 when the Supreme Court defined that term, cases have been legion where the airline or its flight crew have done something affirmative within the airplane during the embarking or disembarking or during the operation of the plane, during the flight, that has caused an injury to the passenger. And we submit this case is right on point with those cases. There is no magical theory we need to come up with to try to explain why there should be a FAA regulation, why there needs to be an industry standard. The fact of the matter here in this case is that simply the flight crew affirmatively operated those video monitors at the wrong time. Now is there a dispute as to this and whether that's going to ultimately prevail on either side? Yes, but we didn't get to that point. We were thrown out on summary judgment. How do you go about proving that it was at the quote unquote wrong time? Well, what we can talk about is what evidence was before the court in dealing with the summary judgment. What I'm reaching for is maybe a little more conceptual. When you say they lowered them or were using them or operating them or whatever at the wrong time, do you determine that it was wrong by reference to industry standards, the airline's policy, FAA regulations, trade association, bulletins, all of the above, or by the expectations of the court? Answer is E, all of the above that you just described. I think they are all relevant in proving what was the normal routine for these video monitors on this airline. And yes, they are all relevant. That's what we're looking for then, is normal routine. Well, that's what SACS calls it. Yes, that's what SACS and other cases have held, that if it's in the normal operation of the airline, then of course there's an argument that the airline makes that, no, that is not an accident, because this is something that just is not unusual or unexpected. It's normal. Counsel, what happens if a passenger, I'm tall, and sometimes the airlines on older flights have those video monitors that are fixed in the center aisle? Yes. And if I were to stand up and hit my head because I didn't see it above my head, would I have an action here? You know, I think in that case, if the plaintiff cannot prove that that is not a normal operation. Oh, no, no, these are fixed monitors. The monitors are separate. Well, if they're fixed, then I think the answer is that would be normal on that. So the airline doesn't have sort of strict liability for any accident that I suffer, any injury that I suffer on their flight. That's right. It's not enough that it happens on the flight. We grant that. And I think the cases make that clear. It can't just happen on the flight, although there is a presumption. But if the airline can come in and prove that it was just the normal operation of that plane. It's just my clumsiness, even though it's largely external to me. It is external. In a sense, it's not like I had a heart attack on their flight. Correct. But external. Yes. Unusual or unexpected, which is the other part of the definition, perhaps not. But that hypothetical is not what we have here. We have a hypothetical, or we have a case here, excuse me, where actually these video monitors come up and down. And, yes, at the wrong time to answer the court's question. The wrong time in this case was during boarding and or disembarking. The routine was that they were up, stowed away in the passive position, out of harm's way when the passengers are coming on to the plane, squeezing into their seats, putting their carry-on luggage underneath, and then standing up. If they expect that these video monitors should be stowed in the passive up position, where they're much safer and they're much more out of harm's way than if they're down, then that's unusual or unexpected. Certainly the plaintiff has a right to prove that to a jury and have the jury determine that. So that is the case in this case. That is the wrong time. It's during getting on and getting off. Because when you're sitting, well, let's say it's during the flight, and they do leave them down because people watch movies. Well, the passenger routinely expects, or expects as a matter of routine, that the monitors could be down because it's during the flight when they're in use, and they're not getting up and down to stow their luggage. But that's not what happened in this case, of course. It was during getting on, during boarding. What would happen if the passenger normally flew Lufthansa and had done so for 40 years, never seen a monitor down, gets on the Icelandair flight and the monitor's down? Does that count, or does it have to be what they expect from the Icelandair flight? I think it could count, yes, because I think that's where the issue of this airline versus industry standards might become relevant. Well, aren't you on, I mean, how do you neutralize the passenger's expectations? Because Judge Bybee's may be quite different from mine since he's a foot taller than I am. Or mine might be different from his because I'm a foot shorter. I'm just not going to be worried about that. So I'm not going to hit it, but he is. Correct. Well, I think, again, these are factors, I think, that will come into play when a prior fact determines whether there's an accident, whether it fits the average passenger's expectations, whether it's usual or expected for a certain objective passenger or this particular passenger. Let's put it this way. Ms. Pfeiffer was not as tall as Justice Bybee. She is very, very slight, and that was enough for her to hit her head quite severely on this video monitor. So I think Justice Bybee has a particular problem, I suppose, when he boards planes. He has to be a little more careful maybe than the smaller passenger. But certainly in this case, there's enough evidence to go to a trial on whether this passenger found it unusual and unexpected, and certainly it was external to her, such that when she got up suddenly and hit her head, that the airline should have some liability for this under the convention. And, again, we're in summary judgment. I think the district court realized that we have disputed issues here. He then used the term, you know, courts are struggling in this area, and we acknowledge that there is a struggle in areas where the airline has not affirmatively done something or there hasn't been a piece of equipment that they actually have on the plane that affirmatively caused an injury. Those are cases that are much more difficult to prove, I think, for plaintiffs, and probably rightly so, because you don't want to legislate where Congress has not, where the FAA has not, but we don't have that in this case. We have, I think, a very simple case that really should go to the jury. And with that, I'll reserve my other five minutes. Thank you. Thank you. May it please the court? My name is Michael Heshin. I'm counsel for Appali Iceland Air in this matter. The issue here, the narrow issue that's before the court, is whether a passenger's act of banging her head on a stationary, fixed, non-defective aircraft component during pre-boarding is unexpected or unusual, as defined by the Montreal Convention. The trial court did not err in finding that it is not unexpected or unusual, and therefore there was no accident, and therefore there was no liability. Opponents' counsel is correct. This is a summary judgment motion, so I just want to point out a few of the undisputed facts that are here. It's undisputed that it was stationary at all relevant times. It wasn't in the up position and then suddenly fall down to the down position when plaintiff was in the row. It was down the entire time. That's undisputed. And plaintiff was required to walk through an aisle that showed every video monitor in the down position at that point. There is no violation of an FAA regulation. There's no allegation of one. There's no evidence of it. Why is that even relevant? I mean, I can see that a violation of FAA regulation would make someone liable perhaps, but why does it have anything to do with relieving someone from liability regarding common sense things? For example, there's probably no FAA regulation saying that you can't put pins in a seat. But there isn't. If someone sat down in a seat full of pins and got pricked, that would be, it seems to me, negligence on behalf of the airlines. Well, Your Honor, it's not about negligence. It's about whether or not the incident was unusual or unexpected. Well, that might be the standard for the negligence, but I think the airplane was designed to have these things go up for a reason. What would the reason be? The reason is actually so that when the aircraft takes off and lands, it doesn't shake too much and potentially cause damage there. Or it has nothing to do with people bumping their heads. There's no evidence in the record it has anything to do with people bumping their heads on video monitors, Your Honor. There's no evidence whatsoever. Their routine practice was to raise them at the time of boarding. No, Your Honor. No? No. Well, I think that was an arguable point at least. There were some e-mails going back and forth from some lady that, you know, said in one place, yes, that was the normal routine. In another place, it was not the normal routine. Is that a disputed fact? Well, I'm not sure that is a disputed fact. There was a station manager who was deposed who stated previously during the incident that it, quote, should not have been there. Didn't the Pfeiffer's testify that they had taken this same flight numerous times and had never seen the monitors down that way? Well, they said what Mr. Pfeiffer said was a little different. He said that he had taken this flight over a period of years many times and had expressly noticed that they were in the up position. Now, the flight attendant he spoke to, as opposed to the station manager, said that it was normal for it to be down there. But in order to find that that's a disputed fact sufficient to create a, quote, unquote, unusual and unexpected event, you would have to find that something that is not a violation of any industry standard, any FAA regulation, any airline policy. Well, where does the requirement of an FAA regulation come in? I mean, we have a number of cases in this circuit and in the Supreme Court that do not rely on a violation of an FAA regulation. Well, I agree with you, Your Honor. I'm just going one step further and saying there's not even that. If the Pfeiffer's could show that it violated an FAA regulation, it would certainly make their case far more powerful. The fact that there isn't an FAA regulation one way or the other seems to me to be then of no account here. Well, I think that that's correct, Your Honor. I'm just accentuating that there was nothing unusual about what happened here. If there really was a safety concern about these being down during boarding, there would be an FAA regulation. Well, that's not, that's, that's, that's a, expresses a lot of faith in the, in the completeness of the FAA. It's an argument, Your Honor. But what the trial court found was there was nothing unusual or unexpected because in the bottom line it was stationary, it was apparent, it was fixed, it was clearly visible. At most what plaintiff argues here is there was an unwritten, unspoken practice to keep these monitors in the up position during boarding, which, by the way, this wasn't boarding. This was pre-boarding. They, Ms. Pfeiffer and her husband were permitted on the aircraft before any other passengers got on, so there wouldn't be any hustle and bustle of the passengers impeding their, their way into their route. And the idea that one station manager who was not in charge of cabin crew operations said that it shouldn't have been there when she later explained she felt it was unfortunate that Ms. Pfeiffer claimed to have hit her head, and that was sad for her. Counsel, I'm looking at the last page, the last paragraph of the district court's written order, and the district court has this remarkable statement. Even assuming a departure from its own policies or possibly industry standards, the plaintiff has still not provided any evidence that defendant's conduct was in violation of any FAA requirements. So are you, are you, are we to understand that if this had been a departure from Iceland Air's own policies and if it had been a departure from industry standards, that the plaintiff still could not recover here under any circumstances? No, I think that would be a harder question at that point. Okay, then you're, then you're suggesting the district court's wrong here. No, I'm not saying the court, the district court's wrong. What I'm saying is that, that the only, that, and as I read the trial court's order, that the only way that this incident, walking into a stationary object that was fixed at the time, could potentially be an accident under the Montreal Convention is if there was a procedure, or if there was a well-established in the motion. No, well, he casts it all on, on violation of FAA requirements. He says unless there's an FAA requirement, there's no violation here. Well, I don't think you're on it. That seems to me to be a pretty broad proposition. I'm not, I'm not sure he's got any support for that. I'm, I'm not sure it's necessary to reach the ultimate conclusion. If there was an FAA regulation that related to this, that still doesn't mean that there would be an accident. But perhaps it would be stronger evidence that there was an accident. It certainly would be stronger, but the district court has said even, even if we assume that Icelandair violated its own policies or, and industry standards, we still don't have a violation here. We still don't have an, we still don't have an accident. Well, I think that's right, Your Honor, and I think that's absolutely correct. So even if, even if Icelandair had violated industry standards, even if every airline in the, in the world required their monitors to be up, and if Icelandair required its monitors to be up on, at every time, except for this flight, that we wouldn't have an accident here? Well, Your Honor, the Ninth Circuit has so far declined to create a per se rule that a violation of a, of a, of a industry standard is an accident per se. But, but you're suggesting we can't even get over summary judgment. We can't even, we can't even get to a jury on this question. That's right, because there's not any disputed facts here. In order for there to be a disputed fact, the court would have to find that an unwritten, unspoken rule that's only has evidence by a single employee who's not in charge of this particular activity would be sufficient to find, for a finder of fact, to determine that this was an accident under the Montreal Convention. There's no support for that proposition whatsoever. It's simply, it's simply not there. There, the undisputed facts here, and they are all undisputed, was that it was down the entire time and it was stationary. It's, it's almost akin to a situation where a, a, a, an airline has a first class lounge where the people behind the desk say that they try to keep the door open every day. And one day they don't and someone walks into the door. Well, that wouldn't be an accident even if there was this unwritten statement. Frankly, I'm not sure there'd be an accident even if there was an industry standard that said, you know, keep the door, keep the door open. If, if someone walks into a stationary object, it's obviously there. A, a couple of other, of the other points I want to make, Your Honor, is Judge Reimer notes, made the comment about the wrong time and what is the wrong time. And I think that's, that's, that's really the heart of the issue here. The lights were on, this was pre-boarding, they had all the time in the world, they had no passenger hustle bustle. And if this court were to determine that this sort of unwritten, unspoken custom, it's not even an industry standard, it's not a policy, all the evidence reflects there's not a policy, could potentially be an accident or an unusual or unexpected occurrence, that would open up a, a, a huge amount of, of potential cases. And this is, Montreal Convention is an international treaty, and, and the purpose is to find uniformity of law. And to say that that sort of evidence, that one employee stated that it put, not that there was a policy, not that there was a custom, she stated a deposition that there was no custom like that, or she was not aware of one, and that it was normal for it to be in the down position during boarding, let alone pre-boarding. If the court were to find it the contrary, it would render the Montreal Convention in the requirement that it be unusual and unexpected really moot. And so, again, we're, we're, we're, we're at this situation. The issue is whether a passenger's act of banging her head on a stationary fixed object could be considered unusual and unexpected. And because there was no policy, and, and, as, as an initial matter, it was stationary and fixed, and therefore it's not unusual and unexpected. And there are none of these other elements present that might raise it to the standard of being unusual and unexpected. Simply walking into something stationary is not an accident. And there's no other indicia that have been noted by other courts, including this court. Like, for example, in the, in the, the, the Tordorsky case, this court found, Judge Reimer found, that there had to be something, you know, some substantial evidence. Here there's nothing except an affidavit from a witness who the trial court deemed to be inadmissible. But even if you look at her affidavit, it doesn't list a single airline that does this. It doesn't list a single periodical that says this is the way it should be done. And, and, and that's it. You know, for these reasons, I submitted a respectfully request the court to form the trial court's order. Unless there's any other questions. Thank you. Thank God. Mr. Chang. Thank you, Your Honors. I think the Court has the issues in focus. If the Court has any questions, I'd be happy to answer them. Otherwise, it's a. Well, your brother counsel here keeps using the words stationary and fixed. Do you describe this monitor that way? Not at all. It goes up and it goes down. And it requires an affirmative act of an airline crew member to actually cause it to go up and down. So it's not stationary and fixed at all. Of course, at the time the passenger hits her head, it happens to be stationary in the wrong position. But no, it's not a stationary fixed object. It's not like an armrest or anything else I can think of in an airplane that's fixed. In fact, most things in an airplane are not fixed. But it is certainly not fixed. Okay. Thank you. Okay. Thank you, Mr. Chang. Thank you, counsel. The matter to start will be submitted.
judges: Quist, Rymer, Bybee